Levine, J.
The facts in the case necessary to a determination of the question at hand are as follows:
The White Sewing Machine Company, on the 20th day of June, 1916, started an action on a claim of $43 before Thomas B. Bolton, a justice of the peace in and for Roekport township, Cuyahoga county, against Thomas IT. Forbes, both plaintiff and defendant being residents of Cleveland township, Cuyahoga *450 county. The White Stewing Machine Company filed a bill of particulars and ,an affidavit in attachment for necessaries, naming the city of Cleveland as garnishee. Summons was issued by said justice of the peace of Rockport township, accompanied by an order of attachment, by delivering the same for service to A. E. Searle, constable, who returned the order of attachment endorsed, “Received this writ June 20th, 1916, and by virtue of its certified copy hereof to McBride, on June 21st, 1916, ,at 11 o ’clock a. m., I served this order on the within named defendant by delivering a true and certified copy hereof with all endorsements thereon, to the within named defendant.”
Judgment was rendered by default by said justice of the peace on the 29th day of June, 1916. On the 30th day of June, 1916, an order was issued on the city of Cleveland to pay the money held by force of the writ of attachment into court, which order was returned endorsed, “Money refused.”
Later, on the 25th day of November, 1916, the White Sewing Machine Company caused to issue upon said judgment so rendered proceedings in aid of execution against the plaintiff’s personal earnings with the Cleveland Telephone Company, of the city of Cleveland, and sought to satisfy its judgment by said proceedings.
The plaintiff herein, Thomas IT. Forbes, brings this action to enjoin the justice of the peace and the other defendants from further proceeding on said judgment, and prays that said judgment and attachment be declared null and void.
I have omitted other facts not necessary to a determination of the question presented to the court.
Plaintiff’s contention is, first, that the justice of the peace was without jurisdiction to issue the summons and the writ of attachment; second, that he was without jurisdiction to render judgment in the ease of The White Sewing Machine Co. v. Thomas H. Forbes; and, third, that the whole proceeding before said justice of the peace was null and void and without force of law .
The gist of the plaintiff’s contention is, that under the law as it now stands, the jurisdiction of justices of the peace in the outlying townships of Cuyahoga county is confined to the town *451 ships for which they were elected, and that a justice of the peace elected in any of the outlying townships of Cuyahoga county is without jurisdiction to issue summons accompanied by a writ of attachment against a resident of the city of Cleveland when neither the plaintiff nor the defendant reside in the township for which the justice had been elected.
Reference is made to Sections 10224 and 10225 of the General Code of Ohio, which define the jurisdiction of justices of the peace in certain cases. These sections read as follows:
“Section 10224. Justices of the peace within and co-extensive with their respective counties shall have jurisdiction and authority:
“1. To administer an oath authorized or required by law to be administered;
“2. To take the acknowledgment of deeds, mortgages and other instruments of writing;
“3. To solemnize marriages;
“4. To issue subpoenas for witnesses and coerce their attendance in causes or matters pending before them, or other cause or matter wherein they are required to take depositions;
“5. To try the action of forcible entry and detention or the detention only of real property, except that in Cuyahoga and Franklin counties the jurisdiction and authority of justices in such case is limited to the townships for which they are elected;
“6. To proceed against security for costs and bail for the stay of execution on their dockets;
“7. To issue attachments and proceed against the goods and effects of debtors in certain cases, except that in Cuyahoga and Franklin counties the jurisdiction and authority in such cases is co-extensive only with the township for which the justice was elected. When such justice has jurisdiction of the defendant because he resides in the township for which the justice was elected or otherwise as provided in the next following section, his jurisdiction in attachment shall be co-extensive with the county;
“8. To issue execution on judgments rendered by them;
“9. To proceed against constables failing to make return, making false return, or failing to pay over money collected on execution issued by such justice;
“10. To try the right of the claimant to property taken in execution or attachment;
*452 “11. To act in the absence of the probate judge in the trial of contested elections of justices of the peace;
“12. To try actions against other justices of the peace for refusing or neglecting to pay over moneys collected in their official capacity, where the amount claimed does not exceed one hundred dollars. Nothing in this clause shall deny or impair any remedy provided by law in such case by suit on the official bond of such justice of the peace, or by amercement or otherwise, for such neglect or failure to pay over money so collected. ’ ’
“Section 10225. Except as provided in the next preceding section, no householder or freeholder resident of the county shall be held to answer a summons issued against him by a justice in a civil matter in any township of such county other than the one where he resides, except in the cases following:
“1. When there is no justice of the peace for the township in which -the defendant resides;
“2. When the only justice residing therein is interested in the controversy;
“3. When he is related as father, father-in-law, son, son-in-law, brother, brotherrin-law, guardian, ward, uncle, nephew, or cousin, to either of the parties, and there is no justice in the township competent to try the cause in the foregoing excepted cases, the action may be brought before any justice of an adjoining township of the same county. The justice must state on his docket the reason for his taking jurisdiction;
“4. When the summons is accompanied with an order to attach property the jurisdiction is co-extensive with the county, except as otherwise specially provided;
“5. When two or more persons are jointly, or jointly and severally bound in a debt or contract, or otherwise jointly liable for the. same. action, and reside in different townships of the same county, the plaintiff may commence his action before a justice of the township in which any of the persons liable resides. In joint actions against the makers and endorsers of notes, due bills, or bills of exchange, the .action must be commenced in the township wherein it is claimed by the plaintiff that an endorser endorsed the note or bill at the time it was made, and the jurisdiction depends thereon. Before the justice takes jurisdiction in such case, the plaintiff, or a person for him, shall file an affidavit setting forth that fact;
“6. In cases of trespass to real or personal property, the action may be brought in the township where the trespass was committed, or in the township where the trespasser, or one of the several trespassers, resides.”
*453 So that by Section 10224 it is provided that justices of the peace, in and co-extensive with their respective counties, shall have jurisdiction and authority to issue attachments and proceed against the goods and effects of debtors in certain cases, except that in Cuyahoga and Franklin counties the jurisdiction and authority in such eases is co-extensive only with the township for which the justice was elected; and in Section 10225 it is provided that when the summons is accompanied with an order to attach property, .the jurisdiction is co-extensive with the county, except as otherwise specially provided.
Counsel for the defendant refer the court to the case of Oakman v. Rose Furniture Company, 10 C.C.(N.S.), 247, wherein, on October 21st, 1907, the Circuit Court of Cuyahoga County held that the amendment of Section 584, Revised Statutes, passed April 18,1894 (93 O. L., 146), excepting Cuyahoga and Franklin counties from the general provision of said section as to the jurisdiction of justices of the peace in attachment cases, is unconstitutional and that justices of the peace in said counties, as well as in all the counties of the state, have jurisdiction eo-extensive with the counties to issue attachments and proceed against the goods and effects of debtors in certain eases.
The plaintiff replies that the above cited decision was rendered on October 21, 1907; that it referred to a provision altogether different in language from the provision now contained in Section 10224, General Code. The General Code, including that provision, was adopted in 1910 on a date subsequent to the date of the circuit court decision, and since the adoption of the General Code, including Section 10224, no decision has been rendered by any court of competent jurisdiction declearing the same unconstitutional; and that on April 18, 1913, the state Legislature enacted Section 1711-1, which re-establishes the office of justice of the peace as a legislative office and defines its jurisdiction, powers and duties. (103 O. L., 214.)
Particular reference is made to the following language contained in said section:
“The jurisdiction, powers and duties of said office and the number of justices of the peace in each such township shall be *454 the same was provided by the laws in force on September 3, 1912. All laws and parts of laws in force on said date in any manner regulating such powers and duties, fixing such jurisdiction or pertaining to such office or the compensation thereof, are hereby declared to be and remain in force until specifically amended or repealed, the same as if herein fully re-enacted.”
The plaintiff contends that the phrase, “all laws in force on September 3, 1912,” is sufficient to include the entire Sections 10224 and 10225 as they now appear in the General Code; that it was the intent of the Legislature to re-enact all the provisions found in the General Code of Ohio relating to justices of the peace which have not been repealed by the Legislature.
It can not be disputed that, under the present amendments to the Constitution, the provision of the General Code limiting justices of the peace to their own townships in Cuyahoga and Franklin counties would be held constitutional.
This question was decided in the case of In re Hesse, 93 O. S., 230.
Plaintiff therefore urges that, since it was within the power of the Legislature to re-enact the entire Section 10224 of the General Code, including the provision relating to Cuyahoga and Franklin counties, they intended to re-enact the same in its entirety, and that the phrase, “laws in force on September 3, 1912,” means all laws appearing on the General Code which had not been repealed by the Legislature.
There were other questions discussed by counsel which are not necessary to .a determination of the question now before us, and they will, therefore, be omitted.
This court deems it its duty to briefly state the history of this legislation relating to the jurisdiction of justices of the peace in Cuyahoga and Franklin counties.
In the case of Oakman v. Rose Furniture Company, 10 C.C. (N.S.), 247, decided October 21, 1907, the court said:
“Previous to April 19, 1898, such jurisdiction was undoubted, for Section 583, Revised Statutes of Ohio, then read:
“ ‘Justices of the peace within and co-extensive with their respective counties shall have jurisdiction and authority: * * * *455 7. To issue attachments and proceed against the goods and effects of debtors in certain eases.’
“On the date mentioned, however, the Legislature amended said section by adding the following language to said paragraph seven:
“ ‘Except in counties containing a city of the second grade of the first class, or of the first grade, second class, the jurisdiction and authority in such cases is co-extensive only with the township for which the justice was elected, but when said justice has jurisdiction of the defendant because he resides, in the township for which said justice was elected, or otherwise, as provided in Section 584 of the Revised Statutes, the jurisdiction in attachment shall be co-extensive with the county.’ (93 O. L., 146.)
‘ ‘ It needs no citation of authorities to show that it was beyond the powers of the Legislature to exempt Cuyahoga and Franklin counties from the operation of the general law on the jurisdiction of justices of the peace in attachment cases.
“This amendment was unconstitutional.”
It is necessary that we understand the reason for the legislative enactment aiming to except certain counties from the provision of the General Code relating to the jurisdiction of justices of the peace.
In the ease of Fisher v. Garey, 11 O. D., 796, 797, decided in 1901, in commenting upon the above cited provision, the court has this to say:
“Before this law was passed matters had got to a bad system. It was a system of hold-up. If a man wanted to give his neighbor plenty of trouble, he would go into the country and bring an action dragging his neighbor out of the city. In fact, it did not require him to go into the country. Justices came to the city and issued attachments while in the city.”
This is hut a mild commentary on the justice court situation in counties containing large cities. The fact is the historic and honorable office of justice of the peace has been so changed and corrupted that the machinery of justice in those offices is operated for revenue only. Justices of the peace elected in the outlying townships of Cuyahoga county have established offices in the business portion of the city of Cleveland; a large number of *456 collectors and hangers-on have spread over the city stirring up litigation, often not without the knowledge and consent of the justices, who reward their efforts by appointing them as' special constables in all cases, brought by them into court, and allow them fees, not infrequently exorbitant, for their various services, at the expense of the litigant. Residents of Cleveland are subject to the civil and criminal jurisdiction of justices and constables in whose election they have no voice. These conditions were made known to the Legislature, and the provision above cited, as enacted April 19, 1898, aimed to bring relief to the large cities of this state from the oppression practiced by justices of the peace. In other words, it aimed to secure to the cities of Cleveland and Columbus a representative form of government as to justice of the peace courts, and sought to establish the principle of home rule in the administration of such courts.
It can not be doubted, even without an enumeration of instances of bad practices and oppression in said courts, that upon the very face of it an evil exists; Justices of the peace elected in their respective townships of Cuyahoga county by the citizens of such townships owe it to their constituents to remain within such townships and administer law and justice within such townships. When a justice of the peace sees fit to leave the township for which he was elected and establishes an office in the city of Cleveland wherefrom he operates and exercises civil and criminal jurisdiction over the people of Cleveland, he is, to say the least, committing an immoral act. The people of the township who elected him are entitled to his full services in the office to which he was elected. The people of Cleveland, never having had any part in the election of such justice of the peace, and being unable to rid themselves of such justice of the peace if he proves inefficient or corrupt, have, to say the least, a grave complaint. It conflicts with the essential principle of representative government, which leaves it to the people to elect their own officials, and to defeat them when they prove unworthy or corrupt.
This information was undoubtedly before the Legislature when they passed the above cited provision on April 19, 1898.
*457 It will be seen that while the case of Oakman v. Bose Furniture Co. is held to be unconstitutional, the ground for such holding does not clearly appear. The decision contains the following language: “It needs no citation of authorities to show that it was beyond the power of the Legislature to exempt Cuyahoga and Franklin counties from the operation of the general law on the jurisdiction of justices of the peace in attachment cases.” While the ground of this decision is not mentioned in the opinion, it undoubtedly was that such a law would, in the opinion of the court, violate Section 26, Article II of the Constitution of 1851 as it then existed, which provided that, “All laws of a general nature shall be of uniform operation throughout the state.” At that time justices of the peace were constitutional officers established by express mention in the Constitution of 1851. Article IV, Section 1, is as follows:
“The judicial power of the state is vested in the Supreme Court, the circuit court, court of common pleas, courts of probate, justices of the peace, and such other courts inferior to the Supreme Court as the General Assembly may from time to time establish.”
Section 9 of the same article provides:
“A competent number of justices of the peace shall be elected by the electors in each township. Their term of office shall be three years, and their powers ,and duties shall be regulated by law.”
It was apparently the opinion of the circuit court that, since justices of the peace are constitutional officers, and since the function of the Legislature is merely to regulate their powers and duties, therefore whatever law the Legislature passes regulating the powers and duties of the office of justices of the peace is subject to Section 26, Article II of the same Constitution, .and that therefore a law relating to justices of the peace, being of a general nature, must have uniform operation throughout the state.
In 1910 the Legislature of Ohio adopted the General Code of Ohio. Section 583 of the Revised Statutes was given a new *458 number, namely, Section 10224. Tbe provision relating to tbe jurisdiction of justices of the peace in Franklin and Cuyahoga counties was changed, and instead of referring to counties containing cities of certain grades, the codifiers inserted the provision, “Except that in Cuyahoga and Franklin counties the jurisdiction and authority in such counties is co-extensive only with the townships in which the justice was elected.”
The General Code in its entirety was adopted by the Legislature. I can find no reported decision of any kind where the provision of Section 10224 relating to the jurisdiction of justices of the peace in Cuyahoga and Franklin counties was passed on by any court, or where its constitutionality has been called into doubt, since the date of the adoption of the same in 1910.
In the year 1912 the constitutional convention was held to frame certain amendments to the Constitution of Ohio of 1851. That the people of Ohio were alive to the existing evil resulting from allowing justices of the peace elected in the outlying townships of counties containing large cities to exercise criminal and civil jurisdiction over the inhabitants of such large cities, appears from the lively discussion of the subject found in the debates of the constitutional convention. On February 29, 1912, the convention had before it the proposal entitled, “Abolition of Justices of the Peace in Certain Cities,” and reading as follows:
“A competent number of justices of the peace shall be elected by the electors in each township in the several counties, until otherwise provided by law. Their terms of office shall be for four years, and their powers and duties shall be regulated by law; provided that no justice of the peace shall be elected in any township in which a court other than a mayor’s court is or may hereafter be maintained with the jurisdiction of all causes of which justices of the peace have jurisdiction, and no justice of the peace shall have or exercise jurisdiction in such township.”
The proponent of the above cited amendment was Mr. Faekler of Cuyahoga county. See pages 551-552, Debates, where Mr. Faekler, of Cuyahoga county, with careful minuteness, laid before the members of the constitutional convention the justice *459 court evil existing in Cleveland. Mr. Fackler’s remarks were as follows:
“In order that you may understand just what this proposal accomplishes, I will say that as the courts are now constituted it would have no effect outside of the city of Cleveland. In the city of Cleveland one of the abuses which we found is the abuse of the attachment process by country justices. A man is elected justice of the peace in a rural township and he opens an office in the city. He runs that office usually in connection with some collection agency, and for almost every cause he will issue an attachment against the wages of men, and it has gotten <to be a source of great oppression on a poorer class of people. In order to meet this abuse, as well as to relieve the crowded docket of our common pleas courts, there has been established in the city of Cleveland municipal courts which have jurisdiction in all cases in which justices of the peace have jurisdiction, but also have jurisdiction of civil cases of a larger amount. The salaries of the men in those courts are $4,500, and so a much better class of men are selected as judges of those courts than are selected as justices of the peace, even in the city of Cleveland. With the present agitation against our courts and our judicial system, it is important to have courts with which the people come in contact so organized as to command the utmost respect; and I do not believe that much can be engendered in the minds of our working people who come in contact with the country justice practicing in a large city. Under this proposal it would not affect any of the Courts in any of the smaller counties; but we have a great evil in our city — and I suppose Cincinnati has it, too — of a country justice practicing in the city. Every time a case is filed the lawyers or collection agency will make an affidavit for an attachment, and the dissolving of the attachment doesn’t take the jurisdiction .away from the country justice, because our courts have held that even though an attachment is dissolved, the justice can continue with the case and decide it. So the attachment is used for this purpose, and men are arrested in large cities and hauled before the justice of the peace, .and finally a settlement is reached when the man should not have been subjected to arrest at all for debt. I don’t believe it is necessary to go into detail on this matter. This proposal as recommended will accelerate business and prevent abuse. That there is an abuse has been recognized by various proposals that have been introduced. One proposal I remember was introduced and provided that no justice of the peace should have jurisdic *460 tion outside of the township in which he was elected. Of course, objection was made to that because in some townships it is necessary for the justice of the peace to have jurisdiction other than in that township. Why, some of the justices of the peace in Cleveland make as much as eight and ten thousand dollars a year. They issue twenty-five or thirty attachments in a day, and they get four dollars and eighty cents in each case. Recently a case came to our office. A boy working at one of the foundries had his wages attached and he was not able to draw any payment for two months, and it was on a claim for eleven dollars, and there were twenty-four dollars costs. There is nothing that will create in the minds of a poor class of people a greater contempt for a whole system of government than such things as that being allowed. This will stop it.”
This amendment passed by almost unanimous vote. I am citing the same in order to indicate that conditions in the large cities resulting from the practices of the so-called country justice were brought to the attention of the constitutional convention, hnd that the members thereof were alive to such evil and sought to remedy the same.
On May 23, 1912, the same subject was up for consideration again before the constitutional convention. It was pointed out that the so-called Peck amendment to Chapter 4 of the Constitution, dealing with the judiciary of Ohio, aimed to eliminate all mention of justices of the peace from the Constitution, and to leave it entirely to the discretion of the Legislature as to what courts they will establish to take their place. On page 1771 of the debates is the following:
“Mr. Taggart: The object and purpose of the Fackler proposal is to prevent country justices of the peace opening offices in the city of Cleveland and similar cities and doing a justice of the peace business; but looking at the language of the proposal as read by the secretary and adopted by the committee on phraseology, it prohibits the justices of the peace in such places and it recognizes the office of justice of the peace as a constitutional office. Now, you can not have recognition of the office of justice of the peace in this proposal and have it stricken out in the judiciary proposal as proposed by Judge Peck.”
• Finally the convention agreed to the Fackler amendment above cited, but added thereto Schedule No. 1:
*461 “Resolved further, that in the event Proposal No. 184 passed by the convention be adopted by the electors of this state and become a part of the Constitution, then Section 9 of Article IY of the Con.-titution is repealed, and the foregoing proposal, if adopted, shall be of no effect. ’ ’
Prom the discussions to be found in the debates it becomes apparent that the members of the constitutional convention felt that full relief would be granted to the large cities of Ohio from the justice court evil in either event; that even if theFackler amendment, under the operation of the above cited schedule, should become ineffective through the passage of the Peek amendment, which eliminates all mention of justices of the peace from the Constitution, the Legislature of Ohio would be fully empowered to grant such relief.
On September 3, 1912, the Peck amendment to Sections 1, 2 and 6 of Article IY, and the Fackler amendment to Section 3 of Article IY were both submitted to the people. Both passed by a substantial majority of the votes of the people of Ohio. The vote east for the Fackler proposal in counties containing the large cities was overwhelming. At the same time the schedule to the Fackler amendment of Section 9 was also passed, which provided that “if the amendment to Article IY, Sections 1, 2 and 6, be adopted by the electors of this state, and become a part of the Constitution, then Section 9 of Article IY of the Constitution is repealed and the foregoing amendment, if adopted, shall be of no effect.” The effect of the schedule was to render the Fackler amendment ineffective, and to elnminate all mention of justices of the peace from the Constitution of Ohio.
I have cited the foregoing discussion found in the debates in order to indicate that one of the purposes of eliminating all mention of justices of the peace from the Constitution was to enable the Legislature to deal with the subject as it deemed wise and necessary.
In the ease above referred to, In re Hesse, 93 O. S., 230, the question arose before the court as to whether Sections 41 and 43 of the act passed May 2, 1913 (103 O. L., p. 279), numbered *462 in the General Code as Section 1581-41, etc., was a valid enactment. The act in question was the act establishing a municipal court in the city of Cincinnati. One of the provisions contained therein is: '■ ■ ■
“That no justice of the peace in any township in Hamilton county, other than in Cincinnati township, nor the mayor of any village already existing, shall have jurisdiction in any criminal proceeding in which a warrant or order of arrest or other process, except subpoena for witnesses, shall have been served upon a citizen or resident of Cincinnati, unless such service be actually made by personal service within the township, village or city in which said proceeding may have been instituted, or jurisdiction in criminal matters unless the offenses charged in the warrant or order of arrest shall have been committed within said township, village or city.”
Another provision therein contained is:
‘ ‘ That no justice of the peace in and for Cincinnati township shall have jurisdiction to issue any warrant or order of arrest or other criminal process.”
By force of these provisions the jurisdiction of justices of the peace outside of Cincinnati township over criminal matters is limited to offenses committed within their respective townships.
On page 232 of the Hesse case, supra, the Supreme Court of Ohio has this to say:
“There can be no objection to the constitutional validity of these provisions. Although Section 26 of Article II of the Constitution imposes a limitation upon the legislative power in requiring all laws of a general nature to have uniform operation throughout the state, yet it seems to be settled that Section 1, Article IV, authorizing the establishment of inferior courts, being a special grant of legislative power upon a particular subject, the General Assembly is vested with full power to determine what other courts it will establish, local if deemed proper, either for separate counties or districts, and to define their jurisdiction and power. It is to be observed that the jurisdiction of no constitutional court is invaded by the sections of the municipal court act under consideration. They abridge and limit the jurisdiction of a statutory court only.”
*463 The above cited case settles finally the question as to the power of the Legislature to limit the jurisdiction of justices of the peace in certain counties to the townships for which they were elected, in either civil or criminal cases. The very effect which the framers of the amendment to Article IV of the Constitution sought to give to it was clearly carried out in the above cited decision. There can be, therefore, no question but that it was within the power of the state Legislature to incorporate the provision relating to the jurisdiction of justices of the peace in Cuyahoga and Franklin counties into the laws governing the jurisdiction, powers and duties of justices of the peace.
On April 18, 1913, the Legislature of Ohio passed Section 1711-1 of the General Code:
‘ ‘ That there be and is hereby established in each of the several townships in the several counties of the state of Ohio, except townships in which a court now exists or may hereafter be created having jurisdiction of all cases of which justices of the peace have or may have jurisdiction, the office of justice of the peace.
“The jurisdiction, powers and duties of said office, and the number of justices of the peace in each such township shall be the same as was provided by the laws in force on September 3, 1912. All laws and parts of laws in force on said date, in any manner regulating such powers and duties, fixing such jurisdiction or pertaining to such office or the incumbents thereof are hereby declared to be and remain in force until specifically amended or repealed, the same as if herein fully re-enacted.
“Section 2. This act shall take effect at the earliest period provided by law.”
The purpose of this undoubtedly was to re-establish the office of justice of the peace as a legislative office, since on January 1, 1913 — the date when the amendment to the Constitution became effective — the office of justice of the peace ceased to be a constitutional office.
The Legislature is presumed to carry out the intent of the framers of the amendment to the Constitution and of the people of Ohio who approved the same.
The question now arises as to the intent of the Legislature .and the meaning which they sought to give to the phrase, “the laws *464 in force on September 3, 1912.” Did the Legislature intend to exclude from the General Code the provision relating to the jurisdiction of justices of the peace in Cuyahoga and Franklin counties, and which limits them to their own township in attachment cases? Or did the Legislature intent to include the same as being part of the General Code and not having been repealed by the Legislature ?
The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. Where the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, the duty devolves upon the court of ascertaining the true meaning. If the intention of the Legislature can not be discovered, it is the duty of the court to give the statute a reasonable construction consistent with the general principles of law. The language of the Legislature must be understood in the light of the intention which the Legislature had, and not according to the technical meaning of the language, unless the language used had a recognized technical meaning and deals with' technical subjects.
In order that we may hold that the Legislature intended to re-enact all the laws relating to the powers, duties and jurisdiction of justices of the peace, and to except the provision limiting justices of the peace to their own townships in Cuyahoga and Franklin counties, because they deemed the same not in force on the date of September 3, 1912, we shall be obliged to say that, despite the fact that there was no judicial determination of the question as to whether or not the above provision relating to justices of the peace in Cuyahoga and Franklin counties was constitutional since the date of its passage as a part of the General Code of Ohio in 1910, that nevertheless the Legislature sat in judgment and held the same as unconstitutional when viewed in the light of the old Constitution, and therefore sought to eliminate the same from the justice court code.
The interpretation of the phrase ‘ ‘ in force ’ ’ is discussed in the case of In re Denison and Wright, reported in the 19th Ontario Law Eeports, page 5, decided in 1909. In that ease the court has under advisement a provision of the law written as follows:
*465 "In case a village is incorporated, the by-laws in force therein shall continue in force until repealed or altered, ’ ’ etc.
In this ease the court held that the words "in force” mean "having the force of law” or "being in existence.” On page 7 the court has this to say:
"The words ‘ in force ’ are used in various parts of the statute law of this province, and not .always, as I think, in the same sense, and the meaning to be attached to them must be gathered in each case by a consideration of the subject-matter to which they relate.”
The by-law in question, by its terms, was to come into operation and be of full force and effect only on and after the next first day of May. It was nevertheless an existing law of the municipality.
A law may be said to be in force when it is not repealed, or, more loosely, when it can be carried into practical effect. Bouvier’s Law Dictionary.
In the ease of Allen, Ball & Co. v. Mayor, 9 Ga., 280, the court holds that—
"A statute of the state declaring in full force all the ordinances of a city or other corporation in operation at its date, does not embrace one which has been judicially pronounced' by the superior court, and which judgment is afterwards affirmed by the Supreme Court, to be inoperative before its passage.”
The ordinance in question was passed by the city of Savannah the 11th day of November, 1842, and entitled, An ordinance amendatory of and in addition to the tax ordinance in the city of Savannah, etc. This ordinance, at the May term, 1849, of the superior court, was declared by said court as inoperative. The same was later affirmed by the Supreme Court upon writ of error the January ensuing. The court therefore holds that that date when the ordinance became inoperative relates back to the time when the superior court declared the same inoperative, and that therefore the act of the General Assembly of December 8th, 1849, declaring in full force all and singular the *466 ordinances of the corporation of Savannah then in operation does not include the said ordinance which w.as judicially declared, before the date of the passage of the act of the General Assembly, as inoperative.
By inference, the court makes it clear that the phrase ‘ ‘ in ‘ operation” would be broad enough to include all ordinances which have not been judicially declared invalid or inoperative before the date of the passage of the act of the General Assembly.
It has been held as a recognized principle that, after a constitutional convention is held to frame amendments to the existing Constitution, and the same are submitted to and approved by the people of the state, the Legislature is presumed to carry into effect the intent and purpose of the amendments.
It has also been held to be the universal rule that the acts passed by the Legislature are presumed to be constitutional and valid.
It is therefore reasonable to assume that the Legislature, in the act of May 18th, 1913, which re-established- the office of justice of the peace and re-enacted the law relating to his powers, duties, etc., meant- by the use of the phrase, “laws in force on September 3d, 1912,” to exclude a law found in the General Code on that date which has not been declared invalid or unconstitutional since the date of its passage? Is it reasonable to assume that the Legislature presumed the same to be unconstitutional and meant to exclude the same from the force of the reenacting act of May 18, 1913 ? Is it not the more reasonable to say that the Legislature was fully aware of the evils arising from the practices of country justices resulting from the exercise of criminal and civil jurisdiction by said officers over the people of large cities who had no voice in their election ? Is it not the more reasonable to say that the Legislature knew of the history of such legislation, and of the motives and purposes which prompted the Legislature at various times to effect a remedy? Is it not the more reasonable to say that they knew of the purposes which prompted the framers of the constitutional amendments submitted September 3d, 1912, when they eliminated all mention of justices of the peace from the Constitution and gave *467 the Legislature full power to deal with the subject as it deemed wise? Can it be said that the Legislature was not aware of the fact that the Fackler amendment, which in express terms eliminates justices of the peace from the large cities having municipal courts, was approved by a substantial majority of the votes of the people of this state ? While it is true that the people also voted for the schedule which made the same inoperative if the Peck amendment goes into effect, nevertheless it is indicative of the opinion of the majority of the people of this state as to what the law ought to be on the subject.
I therefore hold that the meaning and intent which the Legislature meant to give to the phrase, “laws in force on September 3, 1912,” was such laws as appeared in the General Code of Ohio and which have not been repealed by the Legislature; in other words, laws in existence on the statute books. This is strengthened by a subsequent act of the Legislature passed February 27, 1917 (107 O. L., 20). The act, among other things, amends Section 10225.
“Section 10225. Except as provided in the next preceding section (meaning Section 10224) no householder or freeholder of the county shall be held to answer a summons issued against him by a justice in a civil matter in any township of such county other than the one where he resides, except in the cases following:
******
“4. When the summons is accompanied with an order to attach property the jurisdiction is eo-extensive with the county, except as otherwise specially provided.”
If the Legislature, in the act of April 18, 1913, Section 1711-1, intended to and did eliminate the provision relating to the limitation of justices of the peace to their townships in Cuyahoga and Franklin counties, as it appeared in Section 10224 of the General Code on September 3d, 1912, there could be no possible meaning given to the language of the Legislature, “except as otherwise specially provided.” There is' no other provision to be found on the statute books which excepts any. city or county from the jurisdiction eo-extensiye with the county vested in justices of the peace,
*468 It will be observed that while the Legislature seeks to amend Section 10225, it follows almost exactly the language of Section 10225 as it appeared before its amendment. The only change I could discover is that after the word "freeholder” the word "resident” is omitted; and there is no comma .after the word "section.” Otherwise I note no difference.
A study of Section 10224 and Section 10225, General Code, in their entirety, as they were in the General Code after the passage of the same in 1910, indicates clearly that at the time of their passage the Legislature meant, by the use of the sentence "except as otherwise specially provided” to refer to the exception found in Section 10224 in the case of the counties of Cuyahoga and Franklin, where the justices of the peace are limited to their own townships. It is therefore a full recognition that, in the opinion of the Legislature, when it passed the amendment to Section 10225 on February 27, 1917, this exception relating to Cuyahoga and Franklin counties was deemed by the Legislature as still existing and in force. The fact that the Legislature subsequently amends the provision of a statute tends to show that such statute has not heretofore been eliminated from the law. If it should be held that the provision relating to Cuyahoga and Franklin counties and the limitation of justices of the peace to their own townships in such counties w.as not reenacted because not in force on September 3, 1912, there would be no meaning or sense given to the language found in the above stated amendment to Section 10225, ‘ ‘ except as otherwise specially provided.”
It may be added that if the Legislature, on April 27, 1917, in amending Section 10225, instead of saying "when a summons is accompanied by an order to attach property the jurisdiction is eo-extensive with the county, except as otherwise specially provided,” concluded the same by saying "except in Cuyahoga and Franklin counties,” there would be no question then but that, by the express language of the act, the justices of the peace in Cuyahoga county are limited to their own townships in attachment matters. But can there be any doubt as to what the Legislature intended by the language used, “except as otherwise spe *469 daily provided”? They clearly intended to exclude Cuyahoga and Franklin counties from the provision giving justices of the peace jurisdiction co-extensive with the county in attachment matters. ‘ Therefore the Legislature again re-enacted the provision relating to justices of the peace and their jurisdiction in Cuyahoga and Franklin counties in the act of February 27, 1917. That the Legislature had power to do it, and that such a provision meets with no objection, constitutional or otherwise, can not be doubted. In re Hesse, supra.
So far we have dealt with the question of interpretation of Section 1711-1, passed April 18, 1913, and with the force of the amendment to Section 10225, passed February 27, 1917. It now becomes the duty of this court to deal with another very important question, namely this: Did the Legislature, by enacting Section 1711-1, succeed in conferring the jurisdiction, powers and duties which were conferred upon justices of the peace by the laws in force September 3, 1912?
I mention this because Section 16 of Article II of the Ohio Constitution provides, among other things, that “no law shall be revived or amended unless the new act contains the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed.”
In the case of State, ex rel, v. O’Brien, 95 O. S., 166, the Supreme Court of Ohio passes upon the meaning of the above cited constitutional provision wherein the court holds that the provision of the Constitution requiring each new act to contain the entire act as revived is mandatory,'and not directory; and that a violation of same renders the law of no effect whatsoever.
If it is held that since the office of justice of the peace ceased to be a constitutional office when the amendment to the Constitution became effective on January 1, 1913, therefore the laws relating to the powers, duties, jurisdiction, etc., of justices of the peace would be of no effect until re-enacted by the Legislature, the act of April 18, 1913, would amount merely to an attempt at revival, and not to a revival of former laws.
In the case of Stale, ex rel Goodman, v. Redding, 87 O. S., 388, the Supreme Court of 'Ohio held that a justice of the peace holding office January 1, 1913, is entitled to serve as such offi *470 cial -until the expiration of the term of office to which he has been elected; and the adoption of the amendment to the Constitution did not deprive him of that right. On page 394 the court states that the people of Ohio adopted a schedule of amendments, that schedule 20 was adopted, which provides:
“The several amendments passed and submitted by this convention when adopted at the election shall take effect on the 1st day of January, 1913, except as otherwise specifically provided by the schedule attached to any of said amendments. All laws then in force, not inconsistent therewith shall continue in force until amended or repealed.”
Page 395: “Our attention has been directed to this language contained therein: ‘ All laws then in force, not inconsistent therewith, shall continue in force until amended or repealed. ’
“There are, and were on January 1, 1913, a number of sections of the General Code relating to justices of the peace.”
In brief, by the force of the above quoted section of schedule of amendments, justices of the peace may -continue to hold office until the expiration of their terms.
The court does not pass upon the question as to the force of the above cited section of schedule of amendments upon existing laws, and as to whether it would be necessary for the Legislature to re-establish the office and re-enact the laws relating to the powers, duties and jurisdiction of same.
In the case of Hockett v. Licensing Board, 91 O. S., 176, on page 184 the following language may be quoted with profit:
“But it may be claimed that some of these sections were enacted by the Legislature prior to the constitutional amendment on the initiative and referendum, and, therefore, have no application. This is fully answered by the express provision of the Constitution saving certain statutes, as found in a schedule adopted-with the regularly proposed amendments to the Constitution of September 3, 1912. Sfich schedule reads as follows:
“ ‘The several amendments passed and submitted by this convention when adopted at the election shall take effect on-the first day of January, 1913, except as otherwise specifically pro-' vided by the schedule attached to any of said amendments. All laws then in force; not inconsistent therewith, shall continue in force until amended or repealed; * * *’
*471 ‘ ‘ So that by the express provision of the schedule all old statutes not repugnant to or inconsistent with the provisions of the new Constitution are as applicable to the constitutional amendment as those that are passed subsequently to the adoption of the constitutional amendments of 1912. ’ ’
The force of this language is to hold that Sections 5019, 5088 and 5089, laws which were passed before the date when the constitutional amendments became effective, and relating to the initiative and referendum, although such laws were enacted by the Legislature at a time when there was no provision in the Constitution of Ohio on the subject of the initiative and referendum, — that nevertheless the force of the schedule above cited is to continue the same in force. I am citing the same as bearing upon the question: If it be held that the Legislature, in adopting Section 1711-1, did so in violation of Section 16 of Article II of the Constitution, and that therefore what the Legislature did was an attempt to revive the old laws, but that it did not in fact revive them, the question then arises: Does the office of justice of the peace, and the powers, duties and jurisdiction of said office, continue in force, notwithstanding the lack of legislation on the subject, by force of Section 20 of the schedule of amendments? Ijf that be the construction, from the language of the court in Hocketi v. Licensing Board, supra, it becomes clear that, in construing what sections of the General Code continue in force, reference is had not to the old Constitution, but to the new Constitution as amended; and that therefore if justices of the peace derive their power and jurisdiction merely by force of Section 20 of the schedule of amendments, which continues in force all laws in force on January 1, 1913, the same provision is undoubtedly broad enough to include all the provisions found in the General Code which are not repugnant or inconsistent with the amendments to the Constitution. And undoubtedly if the force of said schedule and its provisions are so broad as to include laws relating to a subject not found in the old Constitution, and which were adopted before the new amendment became effective, it is sufficiently broad to continue in force even such laws as may be found of doiibted constitutionality when viewed in the light of the old *472 constitutional provisions, if on January 1st, 1913, the same were not repugnant to or inconsistent with the new amendments which became effective on January 1st, 1913.
In the ease of State, ex rel D’Alton, Prosecuting Attorney, v. Morse, 94 O. S., 435, the question arose as to whether a justice of the peace elected in Adams township, Lucas county, Ohio, may exercise jurisdiction in the city of Toledo, when a part of said township is attached to the city of Toledo. On page 436 the court ha,s this to say:
“By force of the amendments to the Constitution of this state, effective January 1, 1913, the office of justice of the peace then ceased to be a constitutional office. Acting under the authority conferred upon it by Section 1, Article IY, of the Constitution, as amended in 1912, to establish Courts inferior to the court of appeals, the General Assembly on April 18, 1913, enacted Section 1711-1, General Code (103 O. L., 214), which is as follows:”
The Supreme Court then proceeds to quote the provisions of that act. It holds, among other things, that the provisions of Section 1718 of the General Code (which in substance provide that if part of a township is attached to another township, a justice of the peace residing within the limits of the part attached shall execute the duties of his office in the township to which such part is attached) were in force on September 3, 1912; and that by the force of the act of April 18, 1913, which re-established the office of justice of the peace and re-enacted all the laws relating to the office in force on September 3, 1912, continued in force the above-provisions of Section 1716.
Inferentially, the court holds that Section 1711-1 is a v.alid act. The question, however, as to whether it conflicts with Section 16 of Article II of the Constitution, which provides against revival of old laws by mere reference, was not before the court. What the court’s decision would have been, if that question had been raised, is clearly indicated in the case of State, ex rel, v. O’Brien, 95 O. S., supra, where the court unhesitatingly declared an infringement -upon the constitutional provision as rendering the law of no effect. It is quite probable that the Legislature merely attempted to revive those laws, *473 but did not in fact revive them, since it did the same by reference and not by giving the full- sections intended to be revived.
If it should be held that it was .necessary for the Legislature, in order to continue the office, powers, duties -and jurisdiction of justices of the peace, to re-enact the laws in force on. September 3, 1912, it must do so by giving the full act intended to be revived, and not by mere reference.
If the jurisdiction of justices of the peace depends upon Section 1711-1, which was passed April 18, 1913, it is quite probable that justices, while established as legislative officers, possess no powers except such powers as are given them by express enactments of law.
On April 28, 1913, the Legislature of the state of Ohio passed an amendment to Section 13423 of the General Code defining the jurisdiction of justices of the peace in certain criminal cases. If it should be held that justices of the peace derive their powers, not by the force of Section 20 of the schedule of amendments, but by 'the force of the act of April 28, 1913, which is Section 1711-1, it is probable that the justices of the peace have only such criminal jurisdiction as is expressly given them in the act of April 28, 1913, 103 O. L., 539.
The amendments to Section 10225 (107 O. L., 20), would give jurisdiction in certain civil cases, including attachments, but the same must be read in connection with the section preceding it, as Section 10225 begins with the words, “except as provided in the next preceding section”; and also provides, “4. Where a summons is accompanied by a writ of attachment, in which case jurisdiction shall be eo-extensive with the county, except as otherwise specially provided,” meaning the exception as to Cuyahoga and Franklin counties.
It may be added that the objection against revivals by reference is that it leads to mere guesswork and speculation as to what the Legislature intended; and if by broad -and liberal construction it should be held that the act of.April 28," 1913, which is Section 1711-1, would have the effect of reviving all the laws which were formerly in force, a limitation as to the meaning of the phrase, “all laws in force on September 3, *474 1912,” and an interpretation given to it, as meaning to exclude the provision relating to Cuyahoga and Franklin counties, wherein justices are limited to their own townships, would give greater strength to the objection raised against revival of laws or re-enactment of laws by mere reference. It is quite probable that the objection would be .almost met if we were to construe the phrase, “laws in force on September 3, 1912,” as meaning laws appearing in the General Code of Ohio and which have not been repealed by the Legislature. It would then amount to a re-codification of all the laws found in the so-called justice court code, ,a part of the General Code of Ohio. The less speculation we insert into the meaning of the phrase “in force on September 3, 1912,” the more probable that the provision of the Constitution against revival of laws by mere reference would be less serious. It has accordingly been held that a compilation of laws into a code and a reference thereto in the act of the Legislature intending to enact the same as a whole, renders the enactment free from constitutional objections, even though the entire act or acts were not given or recited in full.
The only theory npon which the act of April 28, 1913, can be held free from the constitutional objection against revival of law by reference is to say that the Legislature meant thereby to re-enact all the laws found in the General Code which have not been repealed since their enactment in 1910.
Upon full consideration of the matter before me, I have come to the conclusion that justices of the peace of the outlying townships in the county of Cuyahoga have no jurisdiction to issue attachments against residents of Cleveland when neither the plaintiff nor defendant reside in the township for which the justice was elected; that such proceedings are null and void and without the force of law; that a judgment rendered in such cases by such justices of the peace is null and void and without the force of law.
Whether justices of the peace have any jurisdiction other than is provided in the act of April 28, 1913, giving them jurisdiction co-extensive with the county in certain criminal cases, and in civil cases as provided in the amendment to Section 10225 (107 O. L., 20), it is not necessary to decide,
*475 Whether it will be necessary for the Legislature to more definitely fix the duties, powers and jurisdiction of justices of the peace is merely indicated in the discussion, but not decided.
By force of the foregoing discussion, 1 am of the opinion that at last there has been secured to the people of the city of Cleveland a much needed home rule in the administration of justice. That under the present state of the law, residents of Cleveland need not submit to the jurisdiction of justices of the peace in attachment cases. It is to be hoped that the justices of the peace in the outlying townships, by being confined to their own townships in attachment cases, and unable to levy tribute upon the people of Cleveland, will find it unprofitable to continue their establishments in the city of Cleveland, and will be forced to lose their greatest source of emolument, and will return to the townships which elected them to their respective offices.
The prayer of the petition that the temporary restraining order 'be made permanent is granted. The defendants herein are restrained from further proceeding to collect said judgment. The plaintiff will be required to submit a journal entry embodying the orders of the court.